UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNETTE SLAUGHTER,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Hon. Janet T. Neff

Case No. 1:09-cv-530

# REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.§ 405(g), to review the final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 38 years old at the time of the ALJ's decision. (Tr. 22). She successfully completed high school and has no past relevant work experience. (Tr. 22).

Plaintiff filed for benefits on August 29, 2005,[1] alleging that she had been disabled since August 5, 2005, due to severe depression and anxiety disorders. (Tr. 53-55, 85). Plaintiff's application was denied, after which she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 24-53). On March 7, 2008, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, John Petrovich. (Tr. 171-98). In a written decision dated September 4, 2008, the ALJ determined that Plaintiff was not disabled. (Tr. 15-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-7). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On October 30, 1995, Plaintiff was evaluated by Morgan Lachney, Ed.D, Ph.D., to determine whether she experienced Attention-Deficit/Hyperactivity Disorder (AD-HD). (Tr. 102). Plaintiff reported experiencing symptoms that "significantly impair" her social and occupational

---

[1] Plaintiff twice previously applied for disability benefits unsuccessfully.

functioning. (Tr. 102). Dr. Lachney observed, however, that Plaintiff's alleged symptoms were "far more debilitating than one would expect." (Tr. 102). Plainitff also exhibited generalized anxiety disorder with "clinically significant" psychosomatic complaints and symptoms. (Tr. 102). The doctor concluded that while Plaintiff met the criteria for AD-HD, his "major concern" was Plaintiff's anxiety disorder. (Tr. 102).

Plaintiff was examined by Dr. Erwin Grasman on September 5, 2004. (Tr. 117). The doctor reported that Plaintiff's depression was "markedly better" with medication. (Tr. 117). Dr. Grasman further reported that Plaintiff's panic attacks and social phobias were controlled with medication. (Tr. 117). Treatment notes dated April 12, 2005, indicate that Plaintiff was "doing much better" with respect to her "mood/panic attacks." (Tr. 112). Treatment notes dated June 20, 2005, indicate that Plaintiff's anxiety was "improved." (Tr. 111).

On December 5, 2005, Plaintiff's mother, Janice Babcock, completed a report concerning Plaintiff's activities. (Tr. 64-71). Babcock reported that on a typical day, Plaintiff cares for her children, prepares meals, reads to her children, helps her son with his homework, cleans her residence, and washes clothes. (Tr. 64-66). Babcock reported that Plaintiff also goes shopping several times weekly and likes to perform arts and crafts. (Tr. 67-68).

On February 25, 2006, Plaintiff participated in a consultive evaluation conducted by Allison Bush, M.S., L.L.P. (Tr. 127-30). Plaintiff reported that she was disabled due to agoraphobia, social anxiety disorder, depression, ADHD, migraines, high blood pressure, and irritable bowel syndrome. (Tr. 127). Plaintiff reported that on a typical day she cares for her children, prepares meals, washes laundry, washes dishes, visits with a neighbor, helps her children with homework, plays computer games, and draws. (Tr. 128). Plaintiff also reported that she enjoys

4

sewing, crocheting, and painting. (Tr. 128). Plaintiff further reported that she was presently "remodeling [her] apartment." (Tr. 128). Plaintiff reported that she was "just not happy," but the results of a mental status examination were otherwise unremarkable. (Tr. 128-29). Plaintiff was diagnosed with generalized anxiety disorder with panic disorder and her GAF score was rated as 55-60.[2] (Tr. 130).

On March 29, 2006, Marshall Ron completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 135-49). Determining that Plaintiff suffered from generalized anxiety disorder, Ron concluded that Plaintiff satisfied the Part A criteria for Section 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 136-44). Ron determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 145). Specifically, he concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation. (Tr. 145). Ron further concluded that Plaintiff retained the ability to perform rote tasks on a sustained basis and "may work better with minimal contact with the public." (Tr. 147).

Ron also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 131-33). Plaintiff's abilities were characterized as "moderately limited" in ten categories and "not significantly limited" in the remaining ten categories. (Tr. 131-32).

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55-60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

On April 15, 2006, Dr. Grasman reported that Plaintiff was experiencing depression and anxiety, but noted that Plaintiff was not taking her medication. (Tr. 162).

## **ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from anxiety disorder and depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-20). The ALJ concluded that while Plaintiff had no past relevant work experience, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 20-23). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[3]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she cannot have contact with the public, and (2) she can perform only rote tasks. (Tr. 20). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff had no past relevant work experience, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to

question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert John Petrovich.

The vocational expert testified that there existed approximately 176,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 192-95). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

        a.      The ALJ Properly Evaluated the Medical Evidence

Plaintiff asserts that the ALJ failed to accord sufficient weight to the opinions of Dr. Virgilio Vasquez. Plaintiff asserts that because Dr. Vasquez was her treating physician, the ALJ was obligated to accord controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must,

8

therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors

9

relevant to his assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

Dr. Vasquez first examined Plaintiff on August 8, 2007. (Tr. 164-66). The doctor diagnosed Plaintiff with bi-polar disorder and post-traumatic stress disorder. (Tr. 165). The doctor noted that Plaintiff "will have difficulty interacting with the public," but then concluded that Plaintiff "is unable to participate in any kind of gainful employment." (Tr. 166). In December 2007, Dr. Vasquez reiterated his opinion that Plaintiff was "unable to participate in gainful employment." (Tr. 152). In January 2008, Dr. Vasquez reported that Plaintiff would *never* be able to work at *any* job. (Tr. 151).

As is well recognized, the treating physician doctrine "is based on the assumption that a medical professional who has dealt with a claimant and her maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506 (6th Cir. 2006). When assessing whether an opinion from a care provider is entitled to deference, the question is not whether the care provider later established a "treating physician" relationship with the claimant, but instead whether such relationship existed as of the date the opinion in question was rendered. As the Sixth Circuit has observed:

> But the relevant inquiry is not whether [the doctor] might have become a treating physician in the future if [the claimant] had visited him again. The question is whether [the doctor] had the ongoing relationship with [the claimant] to qualify as a treating physician *at the time he rendered his opinion*."

*Id.*

Accordingly, "a single visit [to a care provider] does not constitute an ongoing treatment relationship." *Id.* Moreover, "depending on the circumstances and the nature of the

alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07.

The record indicates that Dr. Vasquez examined Plaintiff on only one occasion. The doctor, therefore, is entitled to no special deference. Furthermore, even if Dr. Vasquez qualified as a treating physician, the ALJ properly accorded his opinion little weight. As the ALJ concluded, the record fails to support the opinion that Plaintiff is incapable of performing any work. The medical record reveals that Plaintiff's symptoms are controlled with medication. Moreover, Plaintiff's impairments have never necessitated hospitalization or other aggressive treatment. Plaintiff's reported activities are likewise inconsistent with the conclusion that she is unable to work. In sum, substantial evidence supports the ALJ's decision to accord little weight to Dr. Vasquez's opinions.

b.  Plaintiff is not Entitled to Remand

Plaintiff has attached to her brief in this Court, evidence which is not part of the administrative record. (Dkt. #10). This Court, however, is precluded from considering such material. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) ("[o]nly evidence in the record below can be considered when determining whether or not the ALJ's opinion was supported by substantial evidence"). If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996). To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner

would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This additional material consists of treatment notes authored by Dr. Vasquez regarding four examinations between the dates of September 10, 2007, and January 28, 2008. The doctor's treatment notes do not support his opinion that Plaintiff is completely disabled. To the contrary, these treatment notes support the conclusion (supported by the evidence of record) that Plaintiff's symptoms are controlled with medication. It is not reasonable to assert that consideration of this material by the ALJ would have led to a different result. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## **CONCLUSION**

Accordingly, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Therefore, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: July 27, 2010         /s/ Ellen S. Carmody
                            ELLEN S. CARMODY
                            United States Magistrate Judge